## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 1:20-mc-23408-WPD

In re Application of:

MARIA CRISTINA ABUD VALECH,

     Applicant.

_____/

## REPORT AND RECOMMENDATION ON APPLICATION
## FOR DISCOVERY PURSUANT TO 28 U.S.C. § 1782

     **THIS CAUSE** is before the Court on Maria Cristina Abud Valech's ("Abud Valech" or "Applicant") Application for Discovery Pursuant to 28 U.S.C. § 1782 (the "Application"). ECF No. [1]. Applicant seeks discovery relating to the assets of the probate estate of her deceased husband, Jose Alfredo Anton Diaz ("Anton Diaz"), which Applicant intends to use before Ecuadorian Courts to establish the extent of his estate and assert her claim to the spousal share of the estate. *Id.* at 2, 6. Specifically, Applicant seeks leave of Court to obtain discovery from over thirty individuals and entities that Applicant claims have evidence relating to Anton Diaz's assets. *Id.* at 2–3. On September 25, 2020, Jeffrey Himmel, a discovery target and Anton Diaz's son-in-law, filed a Motion to Deny the Section 1782 Application ("Motion") on behalf of Anton Diaz's four children from a previous marriage to Violeta Lily Bucaram (the "Movants"): Juan Jose Anton Bucaram, Maria Elena Anton Bucaram (a.k.a. Maria Elena Hanze), Patricia Cristina Anton Bucaram (a.k.a. Patricia Himmel), and Violeta Janet Anton Bucaram (a.k.a. Violeta Janet Hanze) (collectively, the "Anton Siblings"). ECF Nos. [1] at 2; [11]. Applicant filed a Response in Opposition on October 23, 2020. ECF No. [14]. A Reply to the Response in Opposition was filed by Movants on November 30, 2020. ECF No. [21]. This matter is now ripe for disposition. After

1

due consideration of the Application, the pertinent portions of the record, and being fully advised in the premises, the undersigned **RECOMMENDS** that the Application be **DENIED,** and the Motion be **GRANTED**.

## I.    BACKGROUND

Anton Diaz was "one of Ecuador's richest and most powerful men" whose fortune included businesses, real estate holdings, and investments in Ecuador, Florida, Panama, and other jurisdictions.  ECF No. [1] at 2.  Applicant claims that she was a witness to and participated in Anton Diaz's wealthy lifestyle during their marriage.  *Id.*  Under Ecuadorian law, the spousal share is the right of the surviving spouse to inherit up to a quarter of the deceased spouse's estate.  ECF No. [1-2] ¶ 16.  Despite his vast fortune, Anton Diaz's assets at the time of his death on July 12, 2014, as confirmed by the Ecuadorian revenue service, consisted only of a small personal checking account.  ECF Nos. [11] at 7; [11-1] ¶ 22.  Because Anton Diaz died without any significant assets, Applicant, even if entitled to a spousal share, did not inherit anything from her husband.

Following Anton Diaz's death, Applicant initiated various proceedings in Ecuador in her effort to establish that Anton Diaz had assets to which she could claim her spousal share.  ECF Nos. [11] at 7–8; [11-1] ¶ 10.  Applicant filed a total of eight pre-suit discovery petitions in Ecuador in order to obtain specific evidence.  ECF No. [11] at 8.  Specifically, starting on December 16, 2015, Applicant presented four pre-suit discovery petitions seeking a judicial inspection of the books and records of four of Anton Diaz's businesses: Hotel Oro Verde S.A. Hotver; PYCCA S.A.; Hotel Oro Verde Management S.A.; and Pica-Plasticos Industriales C.A.  ECF Nos. [11] at 8–9; [11-2] at 66–72.  These four applications were denied as improper.  ECF Nos. [11] at 9; [11-2] at 66–72; [11-3] ¶ 4.  On December 17, 2015, Applicant filed another petition seeking "testimony from Mr. Ruben Augusto Estrella Iñiga, the financial manager of PYCCA, S.A.,

regarding the property, assets, and income owned and/or controlled by [Anton Diaz]." ECF Nos. [11] at 9; [11-2] at 72. Mr. Estrella argued that it would be improper for him to provide any response under Ecuadorian law since he was being asked to disclose the financial information of a third person, and, therefore, the petition was denied. ECF Nos. [11] at 9; [11-2] at 72–73. On November 14, 2017, Applicant filed a petition in Ecuador requiring the Anton Siblings to present Anton Diaz's will and any other document relevant or related to intestate succession. ECF Nos. [11] at 9; [11-2] at 73. This request was denied because the judge held that this information was not material in any criminal or civil matter. *Id.* Finally, on November 14, 2017, Applicant filed two more discovery petitions. ECF Nos. [11] at 9; [11-2] at 73–75. The first petition requested that several banking institutions certify whether, from October 6, 2007 to the present, anyone had carried out banking operations on behalf of Anton Diaz. *Id.* The second petition sought to direct at least eleven companies to report whether Anton Diaz had any financial involvement or obligations to those companies. *Id.* These two requests were also denied. ECF Nos. [11] at 9–10; [11-2] at 74–75. In addition to the discovery petitions, Applicant also presented three petitions in Ecuador asserting her conjugal share rights. ECF No. [11] at 10. All three of her petitions for inheritance were denied as "legally unfeasible." ECF Nos. [11] at 10; [11-2] at 75–78.

### A. Discovery Sought

The Discovery Targets of the instant Application are: (1) Jeffrey Himmel (husband of Anton Diaz's daughter Patricia), (2) Francisco Larenas (Senior Vice President at UBS and previously worked at Banco Santander), (3) Maria De la Torre (Registered Client Services Associate at the Miller-Miller Group for Morgan Stanley Wealth Management), (4) Jean Carlo Proaño (Registered Client Services Associate at the Miller-Miller Group for Morgan Stanley Wealth Management), (5) Georgina V. Zegarra (Private Banking Senior Client Services Associate

3

who liaised with Anton Diaz in relation to investment and accounts at Interaudi Bank), (6) Lourdes Taylor (Anton Diaz's personal secretary and registered agent for some of the family's companies in the United States), (7) Aida Valdez (involved in Anton Diaz's day-to-day business activities in the United States), (8) Carlos Valdez (involved in Anton Diaz's day-to-day business activities in the United States) and the entity under their control, Varko International Inc., (9) Niurka Rodriguez (registered agent for some of the Anton Diaz Business' companies in the United States), (10) Canfiel Development Inc., (11) Contadina Inc., (12) SA Ecuplas, (13) Pan International Inc., (14) S.A. Diplast, (15) Salimar, LLC., (16) Windsky Corporation, (17) Ruthlyn Holdings Inc., (18) Orangegrove Property Inc., (19) Rozencwaig & Nadel, LLP (an estate and asset protection planning boutique firm with a domestic and international client base and the registered agent of Ruthlyn Holdings Inc.), and banks such as (20) Wells Fargo Bank N.A., (21) U.S. Trust, (22) UBS Financial Services, Inc., (23) Banco Santander Internacional and its affiliates including Santander Private Banking, (24) Banco Sabadell S.A. and its affiliates including Sabadell Bank & Trust, Morgan Stanley, (25) JP Morgan Chase Bank, N.A., (26) Goldman Sachs Group, Inc. and its affiliates, (27) Interaudi Bank, (28) Citibank, N.A., (29) Merrill Lynch, and (30) Bank of America. ECF No. [1] at 3–4. Applicant explains that all these individuals and entities "may have valuable information about money, investments and other assets in the United States whose ultimate beneficiary was Mr. Anton and/or been used to conceal its source or ultimate beneficiary." *Id.* at 4.

The Application argues that Anton Diaz was "believed to have maintained funds, investments and property" in the United States, primarily in the Southern District of Florida, where he had a secondary residence, his daughter Patricia Himmel has a primary residence, and where

the remaining Anton Siblings had secondary residences.  *Id.*  To further this purpose, Applicant

asks the Court to enter an order:

> (a) compelling the production of the documents identified in the subpoenas
> referenced herein [ECF No. [1-4]] . . . ; (b) permitting the depositions(s) of certain
> discovery targets . . . ; (c) directing the Discovery Targets to preserve the evidence
> sought by the Applicant in order to insure that the evidence is not lost or destroyed in
> the interim; and (d) allowing the Applicant to issue additional discovery requests to
> other parties located or residing within the Southern District of Florida likely to have
> relevant documentary or testimonial evidence related to the reasonably contemplated
> probate proceeding . . .

ECF No. [1] at 10.  The proposed subpoenas to nine individuals generally seek documents relating

to their financial statements; internal communications; tax returns and supporting documentation;

account statements; evidence of incoming or outgoing remittances; deposit documentation; debit

and credit information; all correspondence; and any notes, including memoranda, reports,

opinions, analyses, evaluations, or letters sent to the individuals or entities.  ECF No. [1-4] at 6–7.

The subpoenas for ten companies generally seek information regarding their shareholders,

financial statements, federal and state income tax returns and supporting documentation, evidence

of incoming or outgoing remittances, and deposit documentation.  *Id.* at 13–14.  The subpoena for

the eleven banks and financial institutions generally seeks information regarding any accounts

belonging to any of the fourteen individuals or entities, including "'know your customer'"

documentation, account statements, evidence of incoming or outgoing remittances, deposit

documentation, debit and credit information, all correspondence for the accounts, all documents

related to bank loans or mortgages associated with the entities or individuals, and logs or

spreadsheets showing wire transfers and payment messages.  *Id.* at 20–21.  The subpoena for

accounting firms[1] generally seek information of any of the fourteen individuals or entities

regarding financial statements; internal communications regarding any audits; due diligence,

---

[1] It is unclear which discovery target Applicant intended to subpoena as an accounting firm.

research, analyses, audits, evaluations, reports, or assessments; federal and state tax returns and supporting documentation; work incident to any audits; account statements; evidence of incoming or outgoing remittances; deposit documentation; and debit or credit information. *Id.* at 27–28.

### B. The Declarations Submitted In Support Of The Application

Applicant submitted the Declaration of Mr. Diego Mario Ramirez ("Ramirez Declaration"), an attorney representing Applicant in Ecuador. ECF No. [1-2]. Therein, Ramirez stated that the Anton Siblings were "entitled to inherit almost all, if not all, the probate estate of the deceased Mr. Anton after certain legal deductions, whether or not there was a valid Last Will and Testament." *Id.* ¶ 5. However, pursuant to Ecuadorian law, Applicant is entitled to a spousal share, or *porción conyugal*, of up to 25% of the estate of her deceased husband. *Id.* ¶ 3. This *porción conyugal* is a deduction taken prior to any distribution of assets to be inherited. *Id.* ¶ 15. Consequently, the Ramirez Declaration asserts that "any assets that may have been concealed and/or transferred or conveyed without due consideration and in detriment to the legal rights of the Applicant, are relevant to any probate proceeding filed by Applicant before the Ecuadorian Court." *Id.* Mr. Ramirez explained that documents sought through the Application may be used before Ecuadorian Courts to establish the true extent of the estate and assert her claim to the spousal share. *Id.* ¶¶ 15, 17.

The Ramirez Declaration also explained that according to the *Código Orgánico General de Procesos* "a lawsuit must be accompanied by all the evidence intended to be used." *Id.* ¶ 25. New evidence may be submitted "only if (i) the Applicant could not have had access to it at the time of filing, but asked in its claim for it to be produced; or (ii) Applicant was not aware of it and learned of its existence after filing." *Id.* In either of those cases, the judge would have to rule on its admissibility. *Id.* In the Second Ramirez Declaration, Ramirez again stated that "evidence

obtained through the 1782 Application can be submitted in the initial lawsuit and be later reviewed and weighed by a higher court . . . ." ECF No. [14-1] ¶ 19.

Applicant also submitted the Declaration of Jorge Luis Mazon San Martin to provide an independent legal opinion "on Ecuadorean civil law and procedure regarding the legal grounds based on which Applicant can pursue legal action as surviving spouse . . . and the submission of evidence in such proceedings." ECF No. [1-3] ¶ 3. Therein, Mazon states that under Ecuadorian law, the Anton Siblings are entitled to inherit most, if not all, of their father's probate estate. *Id.* ¶ 7. However, Applicant is entitled to her conjugal share prior to a distribution of the probate estate to the Anton Siblings. *Id.* ¶ 8. In order to assert her rights, Applicant "bears the burden of proof in relation to the ultimate ownership by Mr. Anton at the time of his death of any assts, including those where he was the ultimate owner or beneficiary but are registered under the name of legal vehicles or that should be included in the probate estate . . . ." *Id.* ¶ 11. Mazon also stated that Applicant can use the information obtained through the Application "for a subsequent assertion of her right to distribution of probate assets before the Ecuadorian Court in a probate proceeding . . . ." *Id.* ¶ 14.

### C. The Motion To Deny The Application

The Motion alleges four reasons as to why the Application should be denied. First, Applicant has no viable claim for conjugal rights. ECF No. [11] at 6. Movants allege that Anton Diaz's companies were transferred to his children in February and March 2003, before their mother's death and well before Anton Diaz met and married Applicant; thus, at the time of his death, Anton Diaz's estate was minimal, and Applicant's conjugal rights claims are nonexistent. ECF No. [11] at 6–8. Second, Applicant has already filed eight unsuccessful evidentiary petitions in Ecuador and cannot use this Application as an "end run" to circumvent the decisions made by

Ecuadorian judges to obtain the information.  *Id.* at 6.  Third, Movants allege that Applicant cannot seek the assistance of United States Courts while simultaneously evading Ecuadorian judicial proceedings against her.  *Id.*  It should be noted that as a result of Applicant filing the above noted petitions in Ecuador, the Anton Siblings initiated misdemeanor prosecutions against Applicant on January 15, 2019.  ECF Nos. [11] at 11; [11-3] ¶ 6.  Therein, the Anton Siblings allege that the Applicant defamed them in connection with the proceedings Applicant has filed in Ecuador.  ECF Nos. [1] at 7; [1-2] ¶ 19.  Applicant, who resides in Chile, failed to appear for any of the hearings associated with the misdemeanor prosecution.  ECF Nos. [11] at 11–12; [11-3] ¶¶ 7–11.  The Motion notes that there is an order for Applicant's detention pending in Ecuador.  ECF Nos. [11] at 11–12; [11-3] ¶ 12.  Finally, Movants allege that the Application requests are overbroad and burdensome.  ECF No. [11] at 7, 19–20.

### D.  The Declarations In Support Of The Motion To Deny Application[2]

In support of the Motion, Mr. Gustavo Noboa Bejarano ("Noboa Declaration"), a lawyer and former President of Ecuador, submitted his declaration as an independent opinion on the succession legislation of Ecuador and on the succession rights that the surviving spouse may have or not have a share in the estate of her deceased spouse.  ECF No. [11-1] ¶¶ 2–5, 11.  Therein, Noboa stated that Applicant is not entitled to any conjugal share in Ecuador because Applicant does not lack "basic support."  *Id.* ¶¶ 16–21.  Noboa stated that Applicant has always been

---

[2] In response to the Declarations of Noboa, Alvear, and Kuri submitted by Movants, Applicant submitted second declarations from Ramirez and Mazon.  ECF Nos. [14-1]; [17-1].  Within the Second Ramirez Declaration, ECF No. [14-1] ¶ 16, Ramirez stated that the cases brought by the Applicant before the court in Samborondon were adjudicated by the same judge.  In addition, Ramirez stated that "it is in that county [of Samborondon] where the vast wealth and influence of the Anton Siblings is greatest."  *Id.*  To these statements, Movants submitted, in reply, a second declaration of Alvear, correcting the misstatement that the cases in Samborondon were adjudicated by the same judge.  ECF Nos. [18-1]; [21-1].

economically independent.  *Id.* ¶¶ 18–19.  Indeed, upon Applicant's marriage, she entered into a prenuptial agreement with Anton Diaz where they agreed to a total separation of assets.  *Id.* ¶ 19.

In addition to the Noboa Declaration, the Motion also relies on the declarations of Jorge G. Alvear Macias and Daniel Kuri Garcia.  ECF Nos. [11-2], [11-3].  Alvear detailed the eight evidentiary requests and three complaints before Ecuadorian courts.  ECF No. [11-2] at 65–80.  In his conclusion, Alvear notes that despite Applicant's dissatisfaction with the eleven court requests, she did not challenge any of the decisions with an appeal, a challenge which was available to her. ECF No. [11-2] at 79.  Therefore, Alvear presumed that she "acquiesced in those judicial decisions that were adverse to her."  *Id.*  The Declaration of Kuri, an attorney in charge of the criminal proceedings against Applicant, also detailed the Applicant's failed legal efforts in Ecuador.  ECF No. [11-3].  Kuri stated that a misdemeanor action was initiated against Applicant "considering the large number of vexatious and slanderous legal actions presented" in Ecuador against the Anton Siblings. *Id.* ¶ 6.  He further opined that Applicant continued to present actions in the United States in order "to try to achieve what has been continuously and legally denied" and implied Applicant was not acting in good faith.  *Id.* ¶ 13.

## II.   LEGAL STANDARD

### A.  Section 1782's Statutory Factors

Title 28 U.S.C. § 1782 seeks "to provide federal-court assistance in gathering evidence [and other tangible evidence] for use in foreign tribunals."  *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 247 (2004); 28 U.S.C. § 1782 (2019).  District courts have the authority to grant an application for judicial assistance in foreign proceedings when the statutory requirements of 28 U.S.C. § 1782(a) are satisfied.  The Eleventh Circuit has defined those statutory requirements as follows:

> (1) the request must be made 'by a foreign or international tribunal,' or by 'any interested person'; (2) the request must seek evidence, whether it be the 'testimony or statement' of a person or the production of a 'document or other thing'; (3) the evidence must be 'for use in a proceeding in a foreign or international tribunal'; and (4) the person from whom discovery is sought must reside or be found in the district of the district court ruling on the application for assistance.

*Sergeeva v. Tripleton Int'l Ltd.*, 834 F.3d 1194, 1198−99 (11th Cir. 2016) (quoting *In re Clerici*, 481 F.3d 1324, 1331−32 (11th Cir. 2007)).

However, courts should also consider whether the application is "made in bad faith", "for the purpose of harassment", or is part of a "fishing expedition." *In re Kivisto*, 521 F. App'x 886, 888 (11th Cir. 2013). Specifically, the Eleventh Circuit has instructed that they expect "the district [court] [to] carefully examine and give thoughtful deliberation to any request for assistance submitted by an 'interested person'" and "deny the request" when it "suspects that the request is a 'fishing expedition' or a vehicle for harassment." *Id.* at 889 (quoting *In re Request for Assistance from Ministry of Legal Affairs of Trinidad and Tobago*, 848 F.2d 1151, 1156 (11th Cir. 1988)).

## B. The Discretionary Factors

Once the § 1782 statutory factors are met, a district court must evaluate four discretionary factors established by the Supreme Court in *Intel*. The Eleventh Circuit adopted the *Intel* factors and outlined them as follows:

> (1) whether 'the person from whom discovery is sought is a participant in the foreign proceeding,' because 'the need for § 1782(a) aid generally is not as apparent as it ordinarily is when evidence is sought from a nonparticipant'; (2) 'the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance'; (3) 'whether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States'; and (4) whether the request is otherwise 'unduly intrusive or burdensome.'

*In re Clerici*, 481 F.3d at 1334 (quoting *Intel*, 542 U.S. at 264−65). While the factors are routinely discussed individually, they should not be considered independent of each other; rather, they

should be considered collectively by a court when deciding whether to excise its discretion in granting a § 1782 application. *In re Application of Action & Proc. Found. Daniel Bodnar*, No. C-14-80076-MISC-EMC-LB, 2014 WL 2795832, at *5 (N.D. Cal. June 19, 2014).

Although *Intel* did not establish the appropriate burdens of proof for the discretionary factors, "it did say in a footnote that the party 'targeted' in a § 1782 application 'would no doubt wield the laboring oars in opposing discovery.'" *Dep't of Caldas v. Diageo PLC*, 925 F.3d 1218, 1222 (11th Cir. 2019) (citing *Intel*, 542 U.S. at 265 n.17). In *Dep't of Caldas*, the Eleventh Circuit evaluated the second discretionary factor, regarding a foreign tribunal's receptivity to the § 1782 information. *Id.* at 1222–23. The Court held that it is "not necessary (or helpful) to put the burden on one side or the other…." *Id.* at 1223. Instead, the discretionary factors are more akin to "guideposts." *Id.*

The first *Intel* factor examines "whether 'the person from whom discovery is sought is a participant in a foreign proceeding.'" *In re Clerici*, 481 F.3d at 1334 (quoting *Intel*, 542 U.S. at 264). "[T]he Supreme Court explained that Section 1782 discovery is more likely to be justified when the person from whom the discovery is sought is not a participant in the prospective foreign proceeding." *In re Jagodzinski*, No. 18-20606-MC, 2019 WL 1112389, at *5 (S.D. Fla. Jan. 15, 2019) (citing *Intel*, 542 U.S. at 264), *report and recommendation adopted*, No. 18-20606-MC-WILLIAMS/TORRES, 2019 WL 2255564 (S.D. Fla. Apr. 8, 2019). Indeed, according to the Supreme Court, "nonparticipants in the foreign proceeding may be outside the foreign tribunal's reach . . . [and] evidence, available in the United States, may be unobtainable absent § 1782(a) aid." *Intel*, 542 U.S. at 264.

The second *Intel* factor examines whether the foreign tribunal is willing to consider the information sought. *In re Jagodzinski*, 2019 WL 1112389, at *6. In examining the second *Intel*

factor, the court looks at whether authoritative proof exists that a foreign court would reject evidence obtained with the aid of § 1782.  *In re MTS Bank*, No. 17-21545-MC, 2017 WL 3155362, at *6 (S.D. Fla. July 25, 2017).  Moreover, there is a difference between a foreign court's receptivity or nonreceptivity to the information requested and the "foreign discovery requirement." *H.M.B. Ltd.*, No. 17-21459-CIV, 2018 WL 4778459, at *5, *9.  Ultimately, the party requesting discovery does not have to meet a threshold requirement that evidence sought would be discoverable under the law governing the foreign proceeding.  *In re Application of Mesa Power Grp., LLC*, 878 F. Supp. 2d 1296, 1304 n.3 (S.D. Fla. July 13, 2012).

The third *Intel* factor examines whether the Applicant's § 1782(a) request "attempt[s] to circumvent foreign proof-gathering restrictions or policies of a foreign country or the United States."  *Intel*, 542 U.S. at 265.  While the court does not require an applicant to conclusively establish that they have exhausted all discovery attempts abroad, "a perception that an applicant has 'side-stepped' less-than favorable discovery rules by resorting immediately to § 1782 can be a factor in [the] court's analysis."  *In re: Application of Joint Stock Co. Raiffeinsenbank*, No. 16-MC-80203-MEJ, 2016 WL 6474224, at *6 (N.D. Cal. Nov. 2, 2016) (internal quotations omitted). Nevertheless, the Eleventh Circuit has held that, "even when requested documents may be available in the foreign jurisdiction, there is no requirement to first seek discovery from the non-US tribunal or exhaust other options before applying to a district court for § 1782 discovery."  *In re Application of Bracha Found.*, 663 F. App'x 755, 765 (11th Cir. 2016).

The fourth and final *Intel* factor considers whether the Application contains "unduly intrusive or burdensome requests."  *Intel*, 542 U.S. at 265.  Requests must be narrowly tailored, so that the items sought are limited to issues relevant in the foreign proceeding.  *See In re Bernal*, No. 18-21951-MC-WILLIAMS/TORRES, 2018 WL 6620085, at *26–27 (S.D. Fla. Dec. 18, 2018)

(holding that subpoenas with the words "relating to" or "regarding" with no specificity of the nature to the communication sought can render a discovery request facially overbroad and burdensome). "[U]nduly intrusive or burdensome requests may be rejected or trimmed." *Intel*, 542 U.S. at 265.

## III.   ANALYSIS[3]

### A.  The Application Is A Fishing Expedition Founded On Mere Speculation.

There does not appear to be any dispute that the Applicant is an interested person who is seeking evidence from persons found within this District. Instead, the issue at hand is the third prong of the statutory requirements: whether the evidence is for use in a proceeding in a foreign tribunal. Specifically, whether the proceeding for which the Applicant seeks the requested discovery is within reasonable contemplation and, if so, whether the information is "for use" in that proceeding.

In *Intel*, the Supreme Court held that under § 1782, a proceeding does not need to be pending or imminent, but it must "be within reasonable contemplation" in order for an applicant to seek discovery under the statute. *Intel*, 542 U.S. at 259. The "for use" statutory requirement is satisfied when Applicant can: (1) "inject the requested information into a foreign proceeding" and

---

[3] Applicant states that counsel for Movants failed to confer or make reasonable efforts to confer under Local Rule 7.1(a)(3) prior to seeking a denial of the § 1782 Applicant and filing their Motion to Deny, ECF No. [11]. ECF No. [14] at 4–5. For this reason alone, Applicant states that the Motion to Deny should be denied. *Id.* at 5. Counsel for Movants submitted a Declaration explaining that he attempted to call Applicant's counsel multiple times and spoke with him on September 3, 2020 regarding the Motion to Deny. ECF No. [15-1] ¶ 6. Pursuant to the Declaration, Applicant's counsel stated that Applicant still wished to pursue the Application. *Id.* Indeed, at no time did Applicant's counsel indicate that his client would consent to the Motion to Deny the Application. *Id.* ¶ 9. Counsel for Applicant maintains that the communications with Movants' counsel were only regarding the proposed briefing schedule and not regarding the Motion to Deny. ECF No. [16-1] ¶¶ 4–5. The undersigned finds that Movant did confer, as required, and that denying the Motion on this ground is not warranted.

(2) the discovery is "something that will be employed with some advantage or serve some use in the proceeding." *In re Ferrer*, No. 18-20226-CIV, 2018 WL 3240010, at *5 (S.D. Fla. July 3, 2018), *on reconsideration in part*, No. 18-20226-CIV, 2018 WL 4575043 (S.D. Fla. Sept. 5, 2018), and *appeal dismissed sub nom. Ferrer v. Delcop LLC*, No. 18-13244-JJ, 2018 WL 5881525 (11th Cir. Sept. 19, 2018) (quoting *Mees v. Buiter*, 793 F.3d 291, 298 (2d Cir. 2015)).  It is enough that Applicant "intend[] to offer it in good faith and argue for its admission." *Id.*  However, "[i]f the judge doubts that a proceeding is forthcoming, or suspects that the [Section 1782] request is a 'fishing expedition' . . . the district court should deny the request." *In re Request for Assistance from Ministry of Legal Affairs of Trinidad and Tobago*, 848 F.2d 1151, 1156 (11th Cir. 1988), *abrogated on other grounds by Intel*, 542 U.S. 241.

The Movants argue that the discovery sought cannot be for use in a proceeding because there is no pending proceeding in Ecuador, and none is "reasonably contemplated."  ECF No. [11] at 14–15.  Indeed, they state that "Applicant has unsuccessfully pursued eleven such proceedings in Ecuador"—including eight pre-trial petitions for evidence and three complaints—"all of which have been rejected or unsuccessful."  ECF No. [11] at 15.  Applicant counters that the eight pre-trial petitions to obtain information were "necessary to either gather evidence for the complaint or prove the inability to obtain such evidence prior to filing the complaint."  ECF No. [14] at 3.  The denial or abstention to decide the petitions only indicated "that she may file the complaint absent such information without waiving her right to obtain the evidence during the course of the main proceeding."  *Id.*  Of the three complaints for her spousal share, Applicant states that they were not admitted on procedural grounds and that the "Ecuadorian court has indicated Applicant should

14

add a new claim for inventory of the assets" when she files a new complaint.  *Id.*  The third complaint was fraudulently filed with Applicant's name.  *Id.*

The undersigned recommends that the Application be denied as it appears to be nothing more than a fishing expedition founded upon a theory based on mere speculation.  The Application is predicated on the assumption that Anton Diaz must have had more assets than those determined by the Ecuadorian authorities at the time of his death.  Other than being a wealthy man, the Application provides nothing more in support of that assumption.  In light of the representation made in the Motion that Anton Diaz had transferred all of his assets before his first wife's passing (a representation that the Application does not address), the Application's failure to provide more is notable.  The Application then proceeds to assume that those assumed assets must have been fraudulently transferred to his children after his death for the purpose of divesting the Applicant of her conjugal share.  There is no basis for that theory.  Specifically, Applicant only states that she thought she would be "taken care of" and that an unnamed person, potentially one of her late husband's children, was to take care of her.  ECF No. [14] at 2.  That is the only claim in the Application in support of the argument that the assets she assumes existed at her husband's death were fraudulently transferred.  Even assuming she had been told that she would be taken care of, that is not evidence that someone fraudulently transferred assets away from the estate after Anton Diaz's death.  At best, it is evidence that Anton Diaz expected someone (perhaps one of his children) to continue to care for his wife.  However, that is not evidence that there was fraud.  This lack of specificity is characteristic of a fishing expedition seeking unspecified information "on the off-chance that it may find some evidence of wrongdoing."  *Liles v. Stuart Weitzman, LLC*, No. 09-61448-CIV-CHN, 2010 WL 1839229, at *5 (S.D. Fla. May 6, 2010) (not permitting discovery

of Plaintiff's prior employment records because "[d]efendant has failed to demonstrate that it has any basis for believing wrongful conduct by Plaintiff may be revealed by the records sought….").

In *Matter of Application of O'Keeffe*, 184 F. Supp. 3d 1362 (S.D. Fla. Apr. 26, 2016), *aff'd sub nom. In re O'Keeffe*, 660 F. App'x 871 (11th Cir. 2016), applicant O'Keeffe sought to subpoena a nonparty, Nikita Zukov, to obtain discovery for use in a libel proceeding in Hong Kong brought by Sheldon Adelson. *Id.* at 1364. O'Keeffe was a reporter who had referred to Adelson as "foul-mouthed" in an article and was seeking discovery from Zukov because he had observed "Adelson using bad language during their business dealings over a nine-month period in 1989 . . . ." *Id.* The District Court found that "there was a more concrete basis to believe that relevant information existed and that the request was based on more than mere speculation." *Id.* at 1370–71. Specifically, the Court noted that during oral argument, Applicant's counsel had explained that Zukov "'interacted with Mr. Adelson very frequently ... several times a week,' has a 'very clear and excellent memory,' and has 'direct eyewitness testimony' regarding Adelson's use of foul language." *Id.* at 1365–66. The representations here, however, lack any such specificity. Instead, the Application seeks a wide breadth of information from over thirty different individuals and entities on the grounds that she was told she would be taken care of after her husband died. The Application provides no evidence or information to support the assertion that Anton Diaz had assets at the time of his death, nor does she show how the movement of those or any other asset would be uncovered by the discovery she seeks. Because the Application appears to be a fishing expedition founded upon a theory that lacks any basis other than mere speculation, the Application should be denied, and the Court need not evaluate whether a proceeding in Ecuador is reasonably contemplated to satisfy the requirements of § 1782.

### B.  The Application Does Not Satisfy The *Intel* Discretionary Factors

Even if an application meets the statutory requirements of § 1782 and was not considered a fishing expedition, the statute "authorizes, but does not require, a federal district court to provide assistance . . . ."  *In re Clerici*, 481 F.3d at 1331 (citing *Intel*, 542 U.S. at 255).  Although the undersigned finds that the Application does not meet the statutory requirements, it will nevertheless review the *Intel* factors which, as noted below, also weigh against granting the Application.

The first discretionary *Intel* factor requires a court to weigh whether "'the person from whom discovery is sought is a participant in the foreign proceeding,' because 'the need for § 1782(a) aid generally is not as apparent as it ordinarily is when evidence is sought from a nonparticipant.'"  *Id.* at 1334 (quoting *Intel*, 542 U.S. at 264−65).  In this case, Applicant argues that she is not seeking information directly from participants in the foreign proceeding because she is not seeking information from any of the Anton Siblings.  ECF No. [14] at 10.  Instead, Applicant is seeking information *regarding* the Anton Siblings and Anton Diaz's interests and assets through other individuals, companies, banks, and accounting firms.  However, as the Movants argue, Applicant points to no reason why these documents could not be obtained in those proceedings through the Anton Siblings themselves.  ECF No. [11] at 17.  In short, while the Application does not seek information from parties in the contemplated foreign proceeding, it is seeking information that the parties in that contemplated foreign proceeding, specifically the Anton Siblings, could likely provide.

The second factor requires that the Court consider the "'nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance.'"  *In re Clerici*, 481 F.3d at

1334 (quoting *Intel*, 542 U.S. at 264–65).  Applicant states that the Ecuadorian courts are receptive to the information sought in the § 1782 Application.  ECF No. [14] at 10.  Any "prior procedural rejections or abstentions of pre-trial evidentiary proceedings do not prove otherwise." *Id.*  The Movants argue that in the Ecuadorian prior proceedings the courts repeatedly denied Applicant's attempts to seek discovery from financial institutions and businesses associated with Anton Diaz.  ECF Nos. [11] at 18; [11-2] at 65–80.  As such, there is no reason to believe that the Ecuadorian court is interested in reviewing this information now.  *Id.*

The undersigned finds that on this record this factor neither weighs in favor or against the Application.  Applicant has provided the Declarations of Ramirez and Mazon who both agree that any evidence obtained through the § 1782 Application can be presented to Ecuadorian courts regarding the probate proceedings, pending a review on the admissibility of the evidence.  ECF Nos. [14-1] at 7; [1-3] at 5.  Indeed, the undersigned does not take issue with the argument that an Ecuadorian court would be receptive to evidence that showed that additional assets were part of Anton Diaz's estate.  However, the Application has not sufficiently set out an argument as to how the information it seeks will uncover such information.  Because, as discussed above, there is nothing to support the theory on which the Application is based, the undersigned cannot conclude that the information that is being sought could be relevant to any proceeding.

The third factor is whether the § 1782(a) request "'conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States.'" *In re Clerici*, 481 F.3d at 1334 (quoting *Intel*, 542 U.S. at 264–65).  In other words, the Application is requesting evidence that the Ecuadorian courts have already denied her.  *See Pons v. AMKE Registered Agents, LLC*, No. 20-11733, 2020 WL 6611454, at *4 (11th Cir. Nov. 12, 2020) (holding that the third *Intel* factor was satisfied because the information sought through the § 1782

application was unique in that it was "seeking evidence that could trigger Articles 408 and 193 of the Ecuador Civil Code, neither of which has yet been applied by, or come up in, her divorce proceeding before the Ecuador Family Court").  The Movants state that seeking discovery through the § 1782 Application is an "end-run around the Ecuadorian courts, which have denied her access to the information."  ECF No. [11] at 18.  Furthermore, Movants point to Applicant's failure to appear before the court in Ecuador, despite the court's orders requiring her appearance, as a clear attempt to circumvent the Ecuadorian judicial system.  *Id.* at 18–19.  Applicant states that this factor weighs in favor of granting the § 1782 Application because the Application seeks "different information available in the United States" and also, even though eight pre-trial evidentiary petitions were denied or unsuccessful, this "does not mean Applicant is not entitled to such evidence."  ECF No. [14] at 10.  Applicant was entitled to file her complaint without the evidence and without waiving her right to obtain the evidence during the course of the proceeding.  *Id.* (*citing* the Second Ramirez Declaration, ECF No. [14-1] ¶¶ 14–15, 19–20.)  Applicant also disputes that she failed to appear before the Ecuadorian courts and instead argues that she resides in Chile, she was not properly served there under Ecuadorian law, and, therefore is not evading the Ecuadorian judicial system.  ECF No. [14] at 11.

This factor weighs against granting the Application.  Courts are "hesitant to utilize [the] broad discretion afforded . . . by § 1782, where it appears that the Applicant is attempting to obtain discovery that she was already denied by the foreign tribunal."  *In re Kurbatova*, 2019 WL 2180704 at *4 (vacating the order granting the § 1782 application and quashing the subpoena).  "A perception that an applicant has 'side-stepped' less-than-favorable discovery rules by resorting immediately to § 1782 can be a factor in the court's analysis."  *In re Judicial Assistance Pursuant to 28 U.S.C. 1782 by Macquarie Bank Ltd*, No. 14-cv-00797, 2015 WL 3439103, at *8 (D. Nev.

May 28, 2015).  Here, despite eight pre-trial evidentiary petitions, Applicant has been unable to obtain information regarding the property, assets, and income owned and/or controlled by Mr. Anton.  The information sought in the eight pre-trial evidentiary petitions is very similar to the information sought in this Application.  Both seek information from banks, companies and financial managers regarding Anton Diaz's assets.  These requests were denied for different reasons—being improper, legally insufficient, requesting information deemed not material evidence in a criminal or civil matter, for not specifying whether information would be used in a criminal or civil proceeding, and for requesting the information in an improper forum.  However, the December 17, 2015 request for testimony from Mr. Ruben Augusto Estrella Iñiga, the financial manager of PYCCA, S.A., "regarding the property, assets, and income owned and/or controlled by Mr. Anton" is instructive because it is a request very similar to the ones in the Application.  At least in that request, the Ecuadorian court concluded that the petition was denied because Mr. Estrella Iñiga was being asked to disclose the financial information of a third person.  ECF Nos. [11] at 9; [11-2] at 72–73.  This Application is requesting similar information that was previously denied in Ecuador for both substantive and procedural reasons, and, therefore, this factor weighs against granting the Application.

The fourth factor considers whether the Application contains "'unduly intrusive or burdensome requests….'"  *In re Clerici*, 481 F.3d at 1334 (quoting *Intel*, 542 U.S. at 264–65). The Movants state that based on their requests, the Applicant "seeks every possible financial record under the sun related to Mr. Anton's four children."  ECF No. [11] at 20.  Applicant counters that as the dispute centers on the assets owned or which "should be construed to be owned" by Anton Diaz upon his death, the subpoenas are reasonably and narrowly tailored to produce that information.  ECF No. [14] at 4.  The Applicant further states that it is "essential to know the

timing, circumstances, and legality of the conveyances of assets" from Anton Diaz to the Anton Siblings in order to establish which assets should be construed to have been owned by Anton Diaz at the time of his death. *Id.*

The Court finds that this factor weighs heavily against granting the Application. The Application is a broad sweeping request for financial records of the Anton Siblings and Anton Diaz. ECF No. [11] at 19. There is no attempt to curtail the information even as to the time period at issue, or the topics at issue. Indeed, as to the bank records, the Application does not even list all the institutions; instead, it states "banks, investment banks, investment funds and/or brokers *such as* Wells Fargo Bank, N.A., U.S. Trust, UBS Financial Services, Inc., Banco Santander Internacional and its affiliates including Santander Private Banking, Banco Sabadell, S.A. and its affiliates including Sabadell Bank & Trust, Morgan Stanley and the Miller-Miller Group, JP Morgan Chase Bank, N.A., Goldman Sachs Group, Inc. and its affiliates, Interaudi Bank, Citibank, N.A., Merrill Lynch, and Bank of America. ECF No. [1] at 1 (emphasis added).

After the above consideration, none of the *Intel* discretionary factors weigh in favor of granting the Application. Furthermore, the Application is a fishing expedition because there is no basis, other than mere speculation, to believe that the requested documents will reveal a fraudulent transfer of assets from Anton Diaz.

## IV.    RECOMMENDATION

Based on the foregoing, it is **RECOMMENDED** that the Application, ECF No. [1], be **DENIED**, and the Motion, ECF No. [11], be **GRANTED**.

## V.    OBJECTIONS

A party shall serve and file written objections, if any, to this Report and Recommendation with the United States District Court Judge for the Southern District of Florida, within

**FOURTEEN (14) DAYS** of being served with a copy of this Report and Recommendation. Failure to timely file objections will bar a *de novo* determination by the District Judge of anything in this Recommendation and shall constitute a waiver of a party's "right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions." 11th Cir. R. 3-1 (2016); 28 U.S.C. § 636(b)(1)(C); *see also Harrigan v. Metro-Dade Police Dep't Station #4*, 977 F.3d 1185, 1191-92 (11th Cir. 2020).

**DONE AND SUBMITTED** in Chambers at Miami, Florida, this 31st day of December, 2020.

_____
JACQUELINE BECERRA
United States Magistrate Judge

22